UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| OKPAKO MIKE DIAMREYAN,       : | | |
| Petitioner,       : | | CIVIL ACTION NO. |
| : | | 3:13-CV-269 (JCH) |
| v.       : | | |
| : | | |
| UNITED STATES OF AMERICA,       : | | APRIL 21, 2014 |
| Respondent.       : | | |

**RULING RE: PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 (Doc. No. 1)**

## I.  INTRODUCTION

Petitioner Okpako Mike Diamreyan moves to vacate, set aside, or correct his sentence pursuant to section 2255 of title 28 of the United States Code.  In February 2010, a jury convicted Diamreyan of three counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 1342.  In September 2010, this court sentenced him to 151 months in prison.  The Second Circuit affirmed in July 2012.  The Supreme Court denied Diamreyan's Petition for a Writ of Certiorari in November 2012.  The instant Section 2255 Motion, timely filed in February 2013, followed.

Diamreyan collaterally attacks his conviction on two grounds, both of which rest upon the Sixth Amendment of the U.S. Constitution.  First, Diamreyan claims that he was denied the right to confront certain witnesses against him at trial.  Second, he claims that his trial counsel, Attorney Jonathan Einhorn, rendered assistance which was unconstitutionally deficient in several respects, before and during trial.  Because of factual disputes as to Attorney Einhorn's assistance regarding plea negotiations, the court appointed counsel under the Criminal Justice Act and held an evidentiary hearing on January 2 and February 28, 2014.

For the reasons set forth below, Diamreyan's Motion (Doc. No. 1) is **DENIED**.

1

**II.     BACKGROUND**

Diamreyan was first indicted by a grand jury on one count of conspiracy to commit wire fraud and three counts of wire fraud in September 2009.  See United States v. Diamreyan, No. 3:09-CR-208-JCH, Indictment (Doc. No. 11) (the "First Indictment").  On November 16, 2009, on what was set to be the first day of trial, the First Indictment was dismissed without prejudice and absent objection, due to improper disclosure of privileged marital communications by Diamreyan's wife, Martine Janvier, before the grand jury.  Id., Tr. (Nov. 16, 2009) at 7:12-18. Attorney Einhorn raised this issue upon his receipt of grand jury transcripts in advance of trial.  Id., Def.'s Mot. to Dismiss (Doc. No. 45).

On November 23, Diamreyan was re-indicted on three counts of wire fraud.  See United States v. Diamreyan, No. 3:09-CR-260-JCH, Indictment (Doc. No. 6) (the "Second Indictment").  The Second Indictment charged him with participating in an advance-fee scheme, in which perpetrators persuade their victims to advance a sum of money in exchange for later receipt of a larger sum (or other valuable assets) that the victims never actually receive.

At trial, the government put forward evidence proving that Diamreyan used the email account "milkymyx@yahoo.com" for approximately 10 years and that, prior to 2008, only he had access to it.  Messages to and from this account included scam emails soliciting potential victims as well as emails concerning current and potential victims.  In particular, the government introduced testimony by Janvier that Diamreyan had used the "milkymyx@yahoo.com" email address when they met on the internet in 2003 and that, after being interviewed by law enforcement officials and obtaining access to the account, she uncovered scam emails in it in 2009.

Following a three-day trial, the jury returned a verdict of guilty on all three counts of wire fraud in February 2010.  This court subsequently denied Dimareyan's Rule 29 Motion in April 2010 and sentenced him to 151 months in prison in September 2010.

On appeal, Diamreyan argued that the court erred in (1) calculating the loss amount, (2) finding the number of victims, (3) imposing a leadership enhancement, (4) imposing a vulnerable victim enhancement, (5) ordering restitution, and (6) denying his Rule 29 Motion.  See United States v. Diamreyan, No. 10-3575, Br. for Def.-Appellant (Doc. No. 24).  The Second Circuit affirmed the court's Judgment in July 2012.  See United States v. Diamreyan, 684 F.3d 305, 307 (2d Cir. 2012).  Diamreyan filed a Petition for a Writ of Certiorari, which the Supreme Court denied in November 2012. See Diamreyan v. United States, 133 S. Ct. 675 (2012)

### III.   STANDARD OF REVIEW

#### A.   Section 2255 Motion

"Because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Ciak v. United States, 59 F.3d 296, 301 (2d Cir.1995), abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162 (2002).  "[C]ollateral attack on a final judgment in a criminal case is generally available under [section] 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (citation and internal quotation marks omitted).

In a section 2255 motion, the burden is on the petitioner to prove by preponderance of the evidence his entitlement to relief. See Napoli v. United States, 45 F.3d 680, 683 (2d Cir. 1995); Gotti v. United States, 622 F. Supp. 2d 87, 91 (S.D.N.Y. 2009). In deciding a section 2255 motion, the court must hold a hearing, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, a petitioner is not automatically entitled to a hearing, and no hearing is required where a petitioner's "allegations are 'vague, conclusory, or palpably incredible.'" Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)); see also United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987) ("Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing."). "The procedure for determining whether a hearing is necessary is in part analogous to, but in part different from, a summary judgment proceeding." Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009).

"To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." Gonzalez, 722 F.3d at 131. For ineffective assistance of counsel claims, the threshold evaluation in determining the necessity for a hearing is whether the petitioner's claim is "plausible," not whether that claim "will necessarily succeed." Puglisi, 586 F.3d at 213.

    B.    <u>Ineffective Assistance of Counsel</u>

Ineffective assistance of counsel is "[o]ne claim that may appropriately be raised for the first time in a [section] 2255 motion, 'whether or not the petitioner could have raised the claim on direct appeal.'" Harrington v. United States, 689 F.3d 124, 129 (2d

4

Cir. 2012) (quoting <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003)).  A petitioner claiming ineffective assistance of counsel "must show that (1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result." <u>Id.</u> (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984)).

The Second Circuit has described the burden as "a heavy one because, at the first step of analysis, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> (citations and internal quotation marks omitted).  "The determinative question at this step is not whether counsel 'deviated from best practices or most common custom,' but whether his 'representation amounted to incompetence under prevailing professional norms.'" <u>Id.</u> at 129-30 (quoting <u>Harrington v. Richter</u>, 131 S.Ct. 770, 788 (2011)).

To show the requisite prejudice, at the second step, a petitioner must show "a reasonable probability that his reliance on counsel's ineffective assistance affected the outcome of the proceedings." <u>Pham v. United States</u>, 317 F.3d 178, 182 (2d Cir. 2003). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.  Where a petitioner pleads ineffective assistance in securing a plea, he "must demonstrate a reasonable probability that but for counsel's deficient performance, [he] would have pled guilty instead of going to trial." <u>Raysor v. United States</u>, 647 F.3d 491, 495 (2d Cir. 2011).

## IV. DISCUSSION

In his Section 2255 Motion, Diamreyan claims that he was denied the right to confront adverse witnesses and the right to receive effective assistance of counsel.  His Confrontation Clause claim could have been raised on direct appeal and, hence, is procedurally barred.  With respect to the multiple grounds raised for his ineffective

5

assistance of counsel claim, all but one—namely, counsel's conduct concerning plea negotiations—require no hearing, and the court has addressed these on the basis of the trial record and the parties' submissions.

As to whether Attorney Einhorn failed to convey plea offers from the government or was otherwise unconstitutionally deficient in his assistance in connection with plea negotiations, the court concluded that genuine disputes of material fact existed, whose resolution would require the court to receive testimony by Diamreyan and Attorney Einhorn and to make credibility determinations. An evidentiary hearing was held on January 2 and February 28, 2014. The court's findings of fact and conclusions of law are set forth below in Part IV.B, infra.

    A.    <u>Confrontation Clause</u>

A section 2255 motion is not a substitute for direct appeal. <u>Zhang v. United States</u>, 506 F.3d 162, 166 (2d Cir. 2007) (citing <u>United States v. Munoz</u>, 143 F.3d 632, 637 (2d Cir. 1998)). "In general, a claim may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review." <u>Id.</u> This general rule does not extend to ineffective assistance of counsel claims. <u>Id.</u> In addition, "the procedural default bar may be overcome . . . where the petitioner establishes either (1) 'cause' for the failure to bring a direct appeal and 'actual prejudice' from the alleged violations; or (2) 'actual innocence.'" <u>Id.</u> (quoting <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998)).

Diamreyan claims that the introduction at trial of emails related to non-testifying victims in Government Exhibits 2A1, 2A2, and 2A3 deprived him of the right to examine these witnesses. Pet'r's Mem. in Supp. of Mot. ("Pet'r's Mem.") (Doc. No. 2) at 7-9. However, not only were the emails at issue Diamreyan's, found in his own account, but

6

his counsel did, in fact, object to their admission. See United States v. Diamreyan, No. 3:09-CR-260-JCH, Tr. (Feb. 11, 2010) (Doc. No. 60) at 45:22-24 ("My objection is [that] some of these relate . . . to persons who wouldn't testify.").

In the court's view, this claim is without any merit. Regardless of the merits, however, Diamreyan could have raised the issue on direct appeal. He failed to do so, and the resulting procedural default is not overcome by any exception. First, while Diamreyan casts his claim as one of ineffective assistance of counsel, see Pet'r's Mem. at 11-12; Pet'r's Reply (Doc. No. 8) at 4-6, his counsel did object, and nothing in the record before the court suggests that Attorney Einhorn's decision not to persist in a losing objection was either deficient performance on his part or prejudicial to Diamreyan's case. Second, Diamreyan shows no cause for failing to raise his Confrontation Clause claim on appeal. Lastly, Diamreyan does not claim, nor does anything in the record suggest, actual innocence.

Because Diamreyan's Confrontation Clause claim is procedurally barred, and no exception to that bar applies, this court may not consider his claim here.

### B. Ineffective Assistance:  Plea Negotiations

A criminal defendant's Sixth Amendment right to counsel "extends to the plea bargaining process." Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). Diamreyan's claim for ineffective assistance in that process is subject to Strickland's two-part test, which requires him to show both deficient performance by counsel and prejudice to him as a result. 466 U.S. at 687-88.

Dimareyan submitted to the court, with his Section 2255 Motion, a sworn affidavit attesting to facts that, if true, would constitute serious violations of his constitutional right to effective assistance in connection with plea negotiations. See Diamreyan Aff. (Doc.

7

No. 3-1). Specifically, Diamreyan attested that, near the time of the dismissal of the First Indictment, Attorney Einhorn informed him of a 24-month plea offer by the government but assured him that no subsequent charges could be brought. Id. ¶¶ 4-7. According to Diamreyan, Attorney Einhorn advised him to reject this offer and, instead, to flee the country after his release following dismissal of the First Indictment. Id. ¶ 7. Diamreyan also attested that, but for counsel's misinformation, he would have accepted the government's 24-month plea offer, id. ¶¶ 6, 8, 22, 26; that, as soon as the second case against him was brought, he directed counsel to engage in plea negotiations, id. ¶ 12; that he so directed on more than one occasion, id. ¶¶ 15, 19; and that counsel never informed him of plea offers in this second case and refused to engage in plea negotiations at his explicit direction, id. ¶¶ 20-21.

In July 2013, the court ordered Attorney Einhorn to submit an affidavit addressing these representations in Diamreyan's Affidavit. See Doc. No. 10. In August 2013, Attorney Einhorn filed such affidavit along with several supporting exhibits. See Einhorn Aff. (Doc No. 14). In his Affidavit, Attorney Einhorn denied Diamreyan's account, id. ¶¶ 7-8, and attested that, at the time the First Indictment was dismissed, he told Diamreyan the government was immediately seeking a new criminal complaint to re-arrest him, id. ¶ 10. Further, Attorney Einhorn attested to advising Diamreyan that this turn of events was Diamreyan's chance to take a plea offer, because the government would prefer a plea to re-indicting him. Id. ¶ 11. Finally, Attorney Einhorn attested that, at no time, did Diamreyan evince any interest in a plea, id. ¶ 21, and that Diamreyan refused a possible plea deal because, according to Diamreyan, the evidence was manufactured by his wife in retaliation for his affair with a neighbor, id. ¶¶ 14, 21.

8

Given the gravity of the professional misconduct that Dimareyan has represented to have taken place, the court appointed counsel for him under the Criminal Justice Act for purposes of his Section 2255 Motion. On January 2 and February 28, 2014, the court held an evidentiary hearing to resolve the factual disputes presented by Diamreyan's and Attorney Einhorn's conflicting affidavits.

To the extent that Diamreyan's ineffective assistance of counsel claim relies on what Attorney Einhorn conveyed to him concerning plea offers, the court's determination of Diamreyan's entitlement to relief under section 2255 depends on the court's determination of the credibility of Diamreyan and Attorney Einhorn, respectively, each of whom testified at the hearing as to his recollection of the underlying events. The availability of other circumstantial evidence is limited. Having heard live testimony and reviewed the record, the court determines that Diamreyan's account is not credible and lacks evidentiary support apart from his own self-serving testimony and that, in contrast, Attorney Einhorn has presented a credible, convincing account, which is consistent with the record as a whole. Accordingly, based on the findings of fact and conclusions of law detailed below, the court denies Diamreyan's Motion as it pertains to plea negotiations.

1. Findings of Fact

A threshold issue is whether Diamreyan had sufficient grasp of spoken and/or written English to understand Attorney Einhorn's communications regarding plea offers. This issue arose for the first time at the hearing. Diamreyan never raised the issue of his English in his Section 2255 Motion or, indeed, in any prior proceeding. While an interpreter was present both at his trial in February 2010 and at his sentencing in September 2010, Diamreyan did not appear to need, and did not receive, continuous

interpretation. At the outset of the hearing, Diamreyan likewise stated—through his current counsel, Attorney Margaret Levy—that he did not need continuous interpretation. Nevertheless, he received continuous interpretation throughout the hearing, because Attorney Levy requested it and confirmed that it was helpful to him.

Diamreyan's native language is Urhobo. He testified that no Urhobo interpreter was present, however, on Attorney Einhorn's visits to Wyatt Detention Facility during the pendency of his prior criminal cases. Thus, although Diamreyan's grasp of English was not put in issue prior to the hearing, this issue bears directly on his claims concerning counsel's assistance in plea negotiations.

Having observed Diamreyan testify and having reviewed both handwritten and typed letters from him to counsel, the court, and his family, the court finds that he has a very good command of English, both written and spoken. Although Diamreyan testified that his English is limited, and that he spoke Pidgin English with Janvier, his American wife, the court observed him respond to questions in English promptly and clearly, on numerous occasions, <u>prior</u> to any translation by the Urhobo interpreter. In fact, the court admonished Diamreyan on more than one occasion to wait for the interpreter to translate questions before responding because the court had agreed to provide him with continuous interpretation throughout the section 2255 hearing, at his counsel's request.

As pertains to Diamreyan's written English, the government introduced a number of his letters, all of which are in coherent, grammatical English. Although Diamreyan testified that he had help constructing the English sentences in his Section 2255 Motion and Affidavit, there is no appreciable difference between the quality of English contained in Diamreyan's handwritten letters, Resp't's Exs. 8, 13 & 17, and his

typewritten letters and initial filings in this case, when he was still proceeding pro se. The record unambiguously supports that Diamreyan's command of written English is very good and is, in fact, that of a reasonably well-educated person who does not face serious obstacles in expressing himself in writing.

Like Attorney Einhorn, Attorney Levy has orally communicated with Diamreyan exclusively in English. Her concern about his comprehension of spoken English, for which she has laid only the general foundation that his first language is not English, is limited to whether he can follow the proceedings in court, given the pace and specialized vocabulary of these proceedings. Even assuming her concern is well-founded, which the court does not find, it in no way implicates his one-on-one communications with Attorney Einhorn at Wyatt or by phone.

While this concern does implicate the prior trial and sentencing, Diamreyan has never before raised it, despite having had several opportunities to do so. Cf. United States v. Crandall, 12-3313-CR, 2014 WL 1386650, at *5 (2d Cir. Apr. 10, 2014). The court personally observed Diamreyan throughout the course of the trial and sentencing, at which an interpreter was present, to be used on a standby basis. At no point did Diamreyan or his counsel, Attorney Einhorn, notify the court that he required continuous interpretation. On the contrary, the court's view was then, and remains now, that the provision of a standby interpreter was more than adequate and, indeed, was likely not necessary in light of Diamreyan's command of English.[1]

---

[1] On November 2, 2009, at the start of jury selection, Diamreyan stated that he did not need continuous interpretation and that the presence of the interpreter on a standby basis was sufficient. In fact, despite the presence of the interpreter, the court does not recall Diamreyan having ever consulted him at trial.

Furthermore, in none of his letters, including the undated letter written directly to the court, Resp't's Ex. 18, did Diamreyan indicate that he had experienced language-related difficulties in following the proceedings against him.  The sole evidence as to his need for continuous interpretation is his testimony from the hearing, which testimony is at odds with the record as a whole.  On this score, Diamreyan's testimony was, in the court's view, inconsistent and deliberately vague.  For example, although Attorney Levy clearly stated at the start of the hearing that Diamreyan felt he did not need continuous interpretation, Diamreyan himself later testified that Attorney Levy did not hear him correctly and that he had said he <u>did</u> need such translation.  As to whether he understood the trial, where continuous translation was not provided, he answered: "little."

Based upon the court's personal observation of Diamreyan at the hearing and the court's review of the record, which includes handwritten letters, the court finds that Diamreyan has a very good command of both written and spoken English.  While he testified that he and Attorney Einhorn had difficulties communicating, and that he requested an interpreter, there is no other evidence supporting that testimony.  By Diamreyan's own account, he never refused to meet with Attorney Einhorn without an interpreter and never previously communicated any such issue to the court.  In view of his inconsistent testimony regarding the limits of his English as well as his demeanor on the stand, the court does not credit Diamreyan's assertion that he lacked the capacity to understand or communicate with counsel.[2]

---

[2] The court notes in this regard that the crime of which Diamreyan was convicted involved deception and the fabrication of false identities and back stories.

Diamreyan's testimony regarding plea offers was similarly vague and evasive and contradicted his prior Affidavit. For example, in his Affidavit, he attested to directing Attorney Einhorn, at the time of the dismissal of the First Indictment, to take the government's 24-month offer if new charges could be brought, Diamreyan Aff. ¶ 6, and, later on, to secure a plea deal based on the government's original guideline calculation of 33-41 months, id. ¶ 15—a range that Attorney Einhorn had communicated to him by letter dated October 7, 2009, id. ¶ 14. Yet, at the hearing, Diamreyan testified that Attorney Einhorn never explained the possibility of pleading guilty or discussed the guideline range with him in October 2009 and that, as a result, Diamreyan did not know he could plead guilty until after the sentencing. Diamryean's account is not credible, lacks objective evidentiary support, and is inconsistent with his own Affidavit as well as other evidence in the record.

Attorney Einhorn presented an account that is, in contrast, credible and convincing. Although he did not recall every detail, he recalled the essentials pertinent to Diamreyan's claim, and his recollection was unwavering and consistent with his prior representations in his Affidavit and correspondence. Whereas Diamreyan never clearly articulated in what manner he had indicated to Attorney Einhorn a desire to plead guilty, Attorney Einhorn unambiguously represented that Diamreyan never expressed any such desire. In fact, Attorney Einhorn testified, based on his notes from a meeting with Diamreyan on November 19, 2009, that Diamreyan was willing to consider only time served. At that point, he had been in custody less than three months.

Attorney Einhorn testified, further, that he explained early on to Diamreyan the possibility of pleading guilty and conveyed the government's original guideline range of

13

33-41 months.  He testified that he discussed with Diamreyan, before the dismissal of the First Indictment, the fact that new charges would be brought.  Attorney Einhorn denied advising Diamreyan to flee and testified that he conveyed to Diamreyan the government's plea offer at the time of the dismissal of the First Indictment, explaining to Diamreyan that, because of the government's strong desire to resolve the case by plea rather than re-indict him, this was his chance to plead guilty if he wanted to do so.  By an email dated November 15, 2009 from the government to Attorney Einhorn, the guideline range contained in this plea offer was corrected from 24-30 months, as stated in the formal plea letter, to 21-27 months.  While Attorney Einhorn did not recall that he had discussed with Diamreyan the exact lower range, he recalled, upon seeing the government's email, that the range had been corrected, and he testified that his practice would have been to discuss the most recent plea offer with the defendant.

  Attorney Einhorn's testimony that he conveyed information regarding plea offers is supported by evidence in the record.  The date of his second visit with Diamreyan at Wyatt—October 7, 2009—is the date of his letter to Diamreyan stating the government's original guideline range.  According to Attorney Einhorn's testimony, this letter memorialized the information he had communicated to Diamreyan in person that same day.  The record is likewise devoid of any documentary evidence that Diamreyan directed Attorney Einhorn to secure a plea deal or complained about Attorney Einhorn's failure to secure such a deal at any time subsequent to his conviction and prior to the instant Section 2255 Motion.

Having personally observed Attorney Einhorn's testimony and reviewed the record, the court finds that he gave a credible account, which was consistent with both his prior Affidavit and the record as a whole.

Given this credible testimony, which is supported by other evidence in the record, the court finds that Attorney Einhorn conveyed, in October 2009, the government's guideline range of 33-41 months for a possible plea deal and that he conveyed the later plea offer of 24-30 months provided by the government at the time of the dismissal of the First Indictment. As to the corrected range of 21-27 months, however, the court finds that Diamreyan did not know of it and that Attorney Einhorn likely inadvertently failed to communicate it to him. Attorney Einhorn had no specific recollection of conveying the corrected range, and nothing in the record indicates that Diamreyan had knowledge of an offer as low as 21 months. Had Diamreyan known of it, he would likely have used that figure, rather than 24 months, in his pleadings. Thus, the court infers from the absence of any such mention by Diamreyan that he was not aware of the corrected range of 21-27 months.

Finally, the court finds that, at the time of the dismissal of the First Indictment, Attorney Einhorn did not advise Diamreyan to flee; that Diamreyan knew other charges would be brought; that Diamreyan knew of a plea deal with a guideline range of 24-30 months; and that Diamreyan chose to reject that offer.

    2.    Conclusions of Law

In light of these findings, the court concludes that Attorney Einhorn's performance, while effective in many respects, such as in securing the dismissal of the First Indictment, was nevertheless "objectively deficient" in one respect. Harrington v. United States, 689 F.3d 124, 129 (2d Cir. 2012) (citing Strickland v. Washington, 466

15

U.S. 668, 687-88 (1984)).  That is, while Attorney Einhorn conveyed the range of 24-30 months contained in the formal plea letter, he appears not to have communicated the corrected range of 21-27 months from the government's later email.  It is well settled in this Circuit that failure to convey the terms of a plea offer satisfies the first of Strickland's two prongs.  See Cardoza v. Rock, 731 F.3d 169, 178 (2d Cir. 2013); Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003); Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999).  Where, as here, the corrected terms of the offer are plainly more favorable to the defendant, there can be no question that counsel had an obligation to convey these terms to his client and that failure to do so was deficient performance.

The court concludes, however, that Diamreyan has not proven any prejudice to him as a result.  Under Pham, to establish prejudice, a petitioner must present "objective evidence other than his self-serving statements that he would have accepted the plea offer." 317 F.3d at 182.  Where counsel fails to convey an offer, a substantial disparity between the sentence imposed and the upper end of the range in the offer may in itself constitute such objective evidence.  Id. at 183.  However, in the instant case, Attorney Einhorn did convey the offer, only without the corrected range of 21-27 months.  Hence, the relevant disparity is between the offer that Attorney Einhorn conveyed and the one that he should have conveyed.  In the court's view, the disparity of three months between the two ranges—24-30 months and 21-27 months—is not substantial enough to warrant an inference of prejudice under the circumstances here.  The offer that Diamreyan did reject in November 2009 was identical in all other respects.  Diamreyan never expressed any desire to plead guilty.  He appeared willing

to accept only time served at that point, when he had been detained less than three months.

In sum, there is no objective evidence that, having rejected the offer of 24-30 months, Diamreyan would have taken an offer of 21-27 months, had he known of it. Thus, the court concludes that there is no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Because Diamreyan has not proven by a preponderance of the evidence any prejudice to him as a result of Attorney Einhorn's error in not conveying the corrected range, the court denies his ineffective assistance claim as it relates to failure to communicate plea offers.

C.     Ineffective Assistance: Other Grounds

Although Diamreyan raises several other grounds for his ineffective assistance of counsel claim, none require the court to go beyond the trial record and the parties' submissions. Upon review, the court concludes that all of these alternative grounds are meritless.

Specifically, Diamreyan alleges that Attorney Einhorn was ineffective in cross-examining Janvier, Diamreyan's wife, both because Attorney Einhorn failed to impeach her with certain emails and because his cross-examination resulted in the introduction of an unredacted version of Government Exhibit 5 that is purported to have increased the loss amount and number of victims found by the court at Diamreyan's sentencing. See Pet'r's Mem. at 12-13, 17-18; Pet'r's Reply at 6-10. Further, Diamreyan alleges that Attorney Einhorn was ineffective in failing to produce a scam email ostensibly proving that someone besides Diamreyan had access to the "milkymyx@yahoo.com" account in 2010. Pet'r's Mem. at 12-13, Pet'r's Reply at 10-11.

17

These allegations lack a basis in fact or law. With respect to the two emails alleged by Diamreyan to show Janvier's ability to perpetrate the fraud with which he was charged, these were, by all appearances, merely received by Janvier and forwarded to him. See Ex. A to Pet'r's Mem. Contrary to Diamreyan's allegation, nothing on the face of the two emails suggests that they were written by her. There is, therefore, no basis to view these emails as useful impeachment evidence. Attorney Einhorn's failure to use them for that purpose does not constitute deficient performance on his part, nor was it prejudicial to Diamreyan's case.

With respect to Government Exhibit 5, while an unredacted copy was marked for identification purposes (as Exhibit 5A), and was shown by the government to Janvier on re-direct, it was not, in fact, admitted as a full exhibit and was never seen by the jury. The prejudice that Diamreyan alleges—namely, an increase in the loss amount and number of victims found by the court at his sentencing—is based on a misapprehension of the law of evidence applicable to sentencing proceedings. At the sentencing hearing, the government was entitled to introduce the Western Union and Moneygram records contained in Exhibit 5 regardless of their use at trial. United States v. Fatico, 603 F.2d 1053 (2d Cir. 1979); see U.S.S.G. §6A1.3 ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."). These documents certainly had sufficient indicia of reliability.

With respect to the email which Diamreyan alleges shows that someone else had access to the "milkymyx@yahoo.com" account in 2010, while he was incarcerated, the

issue is the result of a simple mix-up.  Although the scam email at issue resembles those sent by Diamreyan, it was sent from a different email address altogether and, hence, is irrelevant.  See Ex. A to Resp't's Supplemental Mem. in Opp'n (Doc. No. 33-1).  Attorney Einhorn's initial production of this email to the government was the result of his mistaken belief that the email came from the same account used by his client.  The failure to pursue the issue was in no way prejudicial to Diamreyan's case.

In sum, all of Daimreyan's other grounds of ineffective assistance lack merit and cannot form the basis for relief under section 2255.

## V. CONCLUSION

For the reasons set forth above, the court **DENIES** Diamreyan's Motion (Doc. No. 1).  Because Diamreyan has not made a "substantial showing" of denial of a constitutional right, a certificate of appealability will not issue.  28 U.S.C. § 2253(c)(2).  The Clerk is hereby directed to close this case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 21st day of April, 2014.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge